KOLKER ET AL., TRADING AS MARYLAND LUMBER
COMPANY *v.* GORN
(Cross Appeals)

[No. 130, October Term, 1952.]

*Decided May 13, 1953.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William Saxon,* for appellants.

*Isidor Roman* and *Irvin S. Friedman,* for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal and a cross appeal from a decree declaring as a nullity a certain amount of a judgment obtained in a suit at law. Equity jurisdiction is not questioned.

On September 9, 1948, Benjamin Kolker, Fabian Kolker and Marvin Kolker, trading as Maryland Lumber Company, hereinafter referred to as the appellants, filed a bill of complaint against Samuel G. Gorn, appellee here, and others, alleging that the defendants were owners

of property at 3825 Copley Road, Baltimore, and that the appellants on September 13, 1944, obtained a judgment against Samuel G. Gorn, appellee, in the amount of $8,251.66. They asked for a sale and partition of said property to pay said judgment. On September 29, 1948, the defendants in that action filed a demurrer to that bill of complaint and on December 2, 1948, the demurrer was sustained and no amended bill of complaint was filed.

On October 28, 1948, while the demurrer to the aforesaid bill of the appellants was pending, a cross bill of complaint was filed by the appellee here. A demurrer to that cross bill was sustained with leave to amend. On March 21, 1952, the amended cross bill of complaint was filed by the appellee, Samuel G. Gorn, asking, among other things, that the judgment obtained by the appellants against him in the amount of $8,251.66, aforesaid, be declared null and void. The appellants demurred to the amended cross bill, which demurrer was overruled. An answer was filed by the appellants to the amended cross bill. After a hearing in open court the chancellor on October 21, 1952, decreed that the aforesaid judgment in the amount of $8,251.66 be declared a nullity except for the sum of $473.71. From that decree the appellants appeal, claiming that none of said judgment should be declared a nullity. The appellee cross appeals, claiming that all of said judgment in the amount of $8,251.66 should be nullified.

The amended cross bill of complaint, filed as aforesaid on March 21, 1952, among other things, alleged that on September 13, 1944, the appellee had the aforementioned judgment by default entered against him for the principal sum of $6,753.49 plus interest from December 31, 1941, to the date of judgment, or a total of $8,251.66; that said judgment was obtained by fraud and deceit "for the reason that the defendants [appellants] did not have or pretend to have any claim against him from and after August 2, 1940, and by their acts and affidavits in all the proceedings above mentioned, asserted that their

claim was against the Gorn Construction Company." This action by the appellee to strike out this judgment is taken more than seven years after the entry of the judgment and, of course, after the lapse of the term at which it was entered. It is a well known principle of law in this State that a judgment will not be stricken out after the lapse of the term at which it was entered unless the applicant discloses among other things "a meritorious, *bona fide* and substantial defense, for it is a necessary principle of our jurisprudence that judgments are presumed to have been made up after careful deliberation, and consequently, that they should not lightly be interfered with." *Poe* on *Practice and Procedure,* Tiffany's Edition, Vol. 2, Section 392, page 370; *Martin v. Long,* 142 Md. 348, 349, 120 A. 875; *Murray v. Hurst,* 163 Md. 481, 487, 163 A. 183, 85 A. L. R. 442; *Harvey v. Slacum,* 181 Md. 206, 209, 29 A. 2d 276; *Eddy v. Summers,* 183 Md. 683, 688, 39 A. 2d 812. Therefore, the primary question before us in this case is whether the appellee has a meritorious, *bona fide* and substantial defense to the suit at law in which this disputed judgment was obtained.

From the pleadings and the testimony taken in open court, the following facts were developed: The appellee, Samuel G. Gorn, as an individual and trading as Gorn Realty Company, had been engaged in the construction and building business for some years prior to August 2, 1940, and while so engaged bought lumber and materials from the appellants on open accounts. The materials purchased were billed to him individually and charged to the particular house for which the lumber was supplied. In August, 1940, he formed the Gorn Construction Company, a Maryland corporation, and purchased a tract of land, in the corporate name, for multiple house construction. Mr. Gorn was president of that company. The corporation then secured a construction loan by way of a first mortgage from Walker & Dunlop, Inc., in the amount of $18,750.00 and a second mortgage loan from Samuel Pistorio and wife in the

amount of $3,600.00. The appellants were notified of this change in operation.

Mr. Samuel G. Gorn, the appellee, testified that in December, 1941, after the Gorn Construction Company was formed, Mr. Benjamin Kolker, the president of the Maryland Lumber Company, talked to him about the money he owed the appellants. Mr. Gorn said Mr. Kolker told him: "In order to continue my being in business and his not putting me out of business, he would have to have something on his books by the end of the year to substantiate that amount of money." Appellants demanded that the Gorn Construction Company give them a third mortgage upon five of the houses then under construction by it as collateral security for its indebtedness to the appellants in the sum of $6,753.49. Mr. Gorn testified that he was told unless this was done by January 1st the appellants would put him out of business. This third mortgage was executed by the Gorn Construction Company to the appellants on December 31, 1941, in the amount of $6,753.49. On the same date the Gorn Construction Company, by Samuel G. Gorn, President, and Samuel G. Gorn, individually, executed another paper in which, both individually, jointly and severally, the corporation and the appellee acknowledged themselves indebted to the appellants in the amount of $6,753.49, which agreement will be referred to as the Supplemental Agreement and will be set forth at length later in this opinion.

On August 14, 1942, the Gorn Construction Company executed a deed of trust for the benefit of creditors and trustees were appointed by the Circuit Court of Baltimore City. Thereafter the appellants purchased and had assigned to them the aforesaid first mortgage given by the Gorn Construction Company to Walker & Dunlop, Inc., in the amount of $18,750.00. The second mortgage in the principal amount of $3,600.00, which had been given to Samuel Pistorio and wife, was assigned to Benjamin Kolker, individually. On December 24, 1942, Benjamin Kolker instituted foreclosure proceedings as

assignee of the aforesaid second mortgage. Thereupon the trustees under the deed of trust, in order to stop the sale under the second mortgage foreclosure, aforesaid, instituted proceedings in the United States District Court for the District of Maryland under the Bankruptcy Act, alleging that the third mortgage given the appellants was invalid and that Gorn Construction Company had a substantial equity in the property. The matter was referred by the United States District Court to the referee. He, not having the aforesaid Supplemental Agreement of December 31, 1941, aforesaid, before him, found as follows: "At the time the mortgage was executed the debtor had paid in full all liabilities of Samuel Gorn personally with the exception of those arising in connection with the construction of 203 Cleveland Avenue, the last item shown on Trustee's Exhibit 6, on which $473.71 was then due. Since the debtor, as stated, assumed Gorn's individual liabilities it was indebted to the mortgagees for this as well as for the other items. If it was not, the mortgage would nevertheless be valid as to the balance." The trustees filed on April 15, 1943, their report in the Circuit Court showing the sale of the five lots of grounds covered by the second mortgage to Phyllis J. Schreter, daughter of Benjamin Kolker, for the price of $600.00. This sale was ratified by the court. The trustees then dismissed the petition, which they had formerly filed in the Circuit Court of Baltimore City, asking that the third mortgage be declared null and void. There is nothing in the record to show that the sale of this property for $600.00 was considered to be in full settlement of the third mortgage other than the testimony of the attorney for the trustees. That attorney testified "* * * when Kolker, or whoever it was, gave us the $600, that wiped the slate clean between the trustees and Kolker. That is what I was interested in." (The Court) "If that is the case, why is it that their claim filed with the trustees was not withdrawn or marked 'Satisfied', or something like that?" (The Witness) "There is an order of dismissal in the proceedings,

your Honor. This is paper No. 23 in that trust proceedings." Paper 23 in the trust proceedings is merely an order dismissing the petition, previously filed as aforesaid, asking that the third mortgage be declared null and void. There is no reference in this paper to any satisfaction of this third mortgage. This testimony would not bind the appellants. Subsequently, on August 25, 1943, the appellants filed their claim for the amount due under the third mortgage, aforesaid, in the deed of trust case and Benjamin Kolker on the same date filed an individual claim in the trust estate for the deficiency under the second mortgage. There does not appear in the record before us any objection to the filing of these claims in the trust case.

Thereafter, on July 21, 1944, the appellants entered suit against the appellee, Samuel G. Gorn, for the amount due under the third mortgage and on September 13, 1944, obtained a judgment by default in the amount of $8,251.66 aforesaid. On August 4, 1948, a writ of *fieri facias* was issued on that judgment and a levy made on the interest of Samuel G. Gorn in certain property, as a result of which the proceedings now before us were taken.

The learned chancellor, in nullifying the judgment except for the amount of $473.71, states as follows: "Frankly, I do not believe the testimony about extending credit to Mr. Gorn individually. I think the facts in this case clearly show the credit was extended to the corporation, after the corporation was organized, and there is an unpaid balance on the individual account of Mr. Gorn, prior to the incorporation of the company, on 203 Cleveland Avenue of $473.71, and that was the only part of the indebtedness that Mr. Gorn individually owed. Consequently, the claim sued on in the Superior Court of Sixty-three hundred and some dollars was a fraud on him, and I think the Court, by its decree here, should set it aside except as to the $473.71 and interest, and I am prepared to sign a decree to that effect when it is presented to me by counsel."

Neither the referee in bankruptcy nor the chancellor found the debt in the amount of $6,753.49, with the interest thereon amounting to a total of $8,251.66, had been paid and there appears no proof in the record before us to that effect. Their finding was simply that the individual indebtedness of the appellee for materials delivered to him individually was $473.71. The referee in bankruptcy, as before stated, knew nothing of the Supplemental Agreement and there is nothing before us to show that the learned chancellor considered it. This agreement provides substantially as follows:

"WHEREAS, GORN CONSTRUCTION COMPANY and SAMUEL GORN, individually, are jointly and severally indebted unto BENJAMIN KOLKER, FABIAN H. KOLKER and MARVIN D. KOLKER, co-partners, trading as MARYLAND LUMBER COMPANY, in the sum of Six Thousand Seven Hundred and Fifty-Three Dollars and Forty-Nine Cents, ($6,753.49), for merchandise sold and delivered by the said MARYLAND LUMBER COMPANY, to the said GORN CONSTRUCTION COMPANY, upon joint credit of the said GORN CONSTRUCTION COMPANY and SAMUEL GORN;

AND WHEREAS, the said Gorn Construction Company has this day executed a Mortgage upon five (5) lots on the Southwest side of Southern Avenue, in Baltimore City, known as Nos. 2211, 2207, 2203, 2121 and 2117 Southern Avenue, to secure the payment of said sum of Six Thousand Seven Hundred and Fifty-Three Dollars and Forty-Nine Cents, ($6,753.49), with interest at six percent per annum payable within four (4) months from the date hereof;

AND WHEREAS, there are now in the course of construction a house upon each one of the said five (5) lots of ground on Southern Avenue, and the said lots are subject to two (2) liens, the one a Deed of Trust to Oliver M. Walker, et al. Trustees, for an indebtedness of Eighteen

Thousand Seven Hundred and Fifty Dollars, ($18,750.00), due to Walker & Dunlop, Inc., and the other a Mortgage to Samuel M. Pistorio, et al., for Three Thousand Six Hundred Dollars, ($3,600.00), both recorded among the Land Records of Baltimore City.

NOW IT IS HEREBY WITNESSED:

1. The said Mortgage is given and accepted as additional security for said indebtedness, and all other rights, liens or remedies whatever in connection with said indebtedness, which the said Maryland Lumber Company now has are retained and reserved and are not merged or waived by the acceptance of said Mortgage or of the assignment hereinafter mentioned. * * * WITNESS the corporate seal of the said GORN CONSTRUCTION COMPANY, and the signature of its President, and WITNESS ALSO the hand and seal of the said SAMUEL GORN, individually, this 31st day of December, in the year one thousand nine hundred and forty-one.

GORN CONSTRUCTION COMPANY

BY SAMUEL G. GORN     (SEAL)

President.

SAMUEL G. GORN

TEST:

LOUIS MITNICK

SAMUEL JEFF"

The appellee now claims that this agreement was executed by him through mistake and that he did not intend to become personally liable for any amount other than the sum of $473.71. The only testimony as to the execution of this Supplemental Agreement and the third mortgage, aforesaid, is that of the appellee himself, who testified as follows: "These papers were not entirely signed voluntarily, they were shoved down my throat, you might say. I wasn't given much choice to sign them or not. It was a question of 'You sign what we put before you or we put you out of business.' I did

not want to be put out of business. It was put to me that crudely. They said, 'We have to have something on the books to show what you owe us.' Q. Did you at that time object to the wording of the agreement? A. No, sir, I didn't object to the wording of it. I didn't have an opportunity to." He further said that at that time the only amount owing by him individually to the appellants was "four hundred and some dollars".

There is nothing here to indicate that the appellee did not know what he was signing nor is there any evidence that a mutual mistake was made. In *Comegys v. Clarke*, 44 Md. 108, Mrs. Comegys claimed that a mortgage had been obtained from her by fraud and that it was executed by her without any consideration. In holding that the evidence did not sustain the charge of fraud and deceit, this Court said, 44 Md. at page 111: "The paper was merely handed to her with the remark that there was another paper to which her name was wanted. She could read and write and had every opportunity to ascertain what the paper was before executing it; but she neither read it herself nor asked any explanation from either her husband or the justice of the peace, who was present, as to the character or contents of the paper. Under these circumstances she has no right to relief, by injunction to restrain the appellant from a foreclosure of the mortgage upon the ground that its execution was procured by fraud and deceit." *Bletzer v. Cooksey*, 154 Md. 568, 573-574, 141 A. 380; *McGrath v. Peterson*, 127 Md. 412, 416, 96 A. 551. As to appellee's claim that the papers were not signed voluntarily, he admits, however, that he signed this paper in order not to be put out of business. It is not denied that at the time of the execution of this paper either the Gorn Construction Company, of which appellee was president, or he, individually, owed the appellants the amount of $6,753.49. It was said by this Court in the case of *Emerick v. Coakley*, 35 Md. 188, 190: "An agreement to forbear, for a time, proceedings at law or in equity to enforce a well founded claim is a valid

consideration for a promise. 1 *Parsons on Cont.* 365
(5th ed. 440.) Nor is it material that the party making
the promise, in consideration of such forbearance, should
have a direct interest in the suit to be forborne, or be
directly benefited by the delay; for the benefit to the
defendant will be supposed to extend to him, and it
would be enough to make the consideration valid that
the creditor is injured by the delay. 1 *Parsons on Cont.*
368 (5th ed., 443.) The forbearance of the appellees,
and the granting to William H. Emerick an extension
of time for payment of the debt, constitute a good and
valid consideration for the assignment, and it must be
supported unless there is some statute or principle of
law which forbids it." *Bowen v. Tipton,* 64 Md. 275,
289, 1 A. 861; *Hieston v. National City Bank of Chicago,*
132 Md. 389, 395, 104 A. 281; *Wolf v. Maryland Trust
Co.,* 179 Md. 577, 580 20 A. 2d 153; *Strohecker v. Schu-
macher,* 185 Md. 144, 151, 43 A. 2d 208.

Appellee not having shown that he has a meritorious
defense to the claim of $8,251.66,, which is covered by
the Supplemental Agreement, aforesaid, and in that
agreement having acknowledged himself individually,
jointly, and severally indebted to the appellants in that
amount, we must conclude that he does not have a merit-
orious, *bona fide* and substantial defense to the suit at law.
Therefore, his cross bill of complaint, asking that the
judgment obtained in that suit at law be nullified, must
be dismissed.

<div style="text-align: center;">

*Decree reversed, with costs, and cross
bill of complaint dismissed.*