## BISHINS *v.* ST. BARNABAS CORPORATION

[No. 138, September Term, 1959.]

*Decided February 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William B. Bowie,* with whom were *Mark P. Friedlander* and *Charles Walker* on the brief, for the appellant.

*Samuel J. DeBlasis,* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a suit by a tenant to enforce a covenant in his lease of a store in a shopping center in order to prevent the leasing of another store in the same center to a competitor. At the conclusion of the plaintiff's case the defendant landlord moved to dismiss the bill and the motion was granted. The plaintiff appeals.

Bishins, the appellant, leased a store in a new shopping center known as Marlow Heights from the appellee, St. Barnabas Corporation (sometimes referred to below as "Barnabas"). The lease was for a ten-year term beginning October 1, 1957, with two five-year options to renew. The

store was "to be used solely for women's dress shop, merchandising women's dresses, women's coats and accessories (including costume jewelry and cosmetics)". The terms of the lease excluded a number of articles from those which might be sold on the premises. Its concluding clause which is here in controversy reads as follows: "The landlord shall not place in the Center any other store of this general type excepting department stores, Adeline and/or Darling types of operation."

The lease, as originally drafted by the landlord, added, at the end of the sentence just quoted, what appear to have been these words: "and/or other women's shops merchandising apparel at lower or higher prices." As a result of objections by Bishins these words were stricken out. (They are almost illegible in the copy of the lease filed as an exhibit.) The terms of the lease with regard to the uses of the property, the renewal option and the exclusion of competitors were typed into a lengthy standard form of lease used for the Marlow Heights Shopping Center, which covers about thirty pages. There were some other departures from or additions to the standard form of lease made by typewriter or by pen, and it seems clear that the final terms of the lease were the result of negotiations. For example, one added clause (No. 33) restricted Bishins' ownership of or interest in dress shops within a certain radius of the Marlow Heights Shopping Center. The reason for this doubtless was that the rent under the lease here involved was based in part upon a percentage of sales by the tenant.

At the time when the Bishins lease was executed there was a lease of another store in the shopping center to an Adeline store, which has apparently continued in force. About a year and a half after the effective date of the Bishins lease, the landlord asked Bishins to assent to a lease of a store in the center to a women's apparel shop known as an "Armond" shop. Bishins refused to assent and the proposed lease was not made. Shortly afterwards a lease was made of the same store to a corporation which operates women's wear stores known as "Terry" shops. This suit was brought to prevent that lease from being carried into effect.

It appears that the Terry shop lease was made by Keith Corporation, an affiliate of Barnabas, which is authorized by the owner of the shopping center, also an affiliated (or perhaps a parent) corporation, to lease stores in a different part of the center from that in which Barnabas makes such leases. Keith Corporation is not a party to this suit, nor is the owner of the shopping center, nor is the lessee corporation, Rony Realty Company, Inc., which operates the Terry shop. In the view which we take of this case, no defect as to parties, which there may be, would affect the result. Also, for the purposes of this case, we shall assume (without deciding) that the covenant against competition is as effective with regard to those stores in the shopping center which are leased by an affiliate as with regard to those stores which are leased by Barnabas as landlord.

Testimony was admitted at the trial as to the interpretation placed on the clause at issue by the respective parties and as to negotiations leading up to the execution of the lease. The plaintiff, Bishins, called as a witness an officer of Barnabas and its affiliates, one Alfred C. Scuderi. Bishins' and Scuderi's accounts of the conversation resulting in the amendment of the anti-competition clause and their interpretations of its meaning were almost diametrically opposed, except as to one matter. Both agreed that in the women's wear trade an "Adeline" or "Darling" type of operation has a known significance and that a "Terry" shop is of the "Adeline" or "Darling" type of operation. In general, Bishins' operation is described as in a higher range as to prices and quality than the other described types of operation, although some of the same articles are sold in stores of both types of operation and in some instances (under "fair trade" requirements) at the same prices.

The only portion of the pertinent clause of the contract which seems to us to require interpretation as to its meaning is that relating to an Adeline and/or Darling type of operation. This is a trade term, the meaning of which was properly explained by parol testimony (*Aetna Indemnity Co. v. Waters,* 110 Md. 673, 691, 73 A. 712), but the most important element in the testimony on that subject—and, as noted,

both parties agree on it—is that a "Terry" shop is an "Adeline" or "Darling" type of operation. With that point resolved there is no remaining doubt or uncertainty in the language used, and the contract is to be applied according to its clear and unambiguous meaning. *Maryland Coal Co. v. Cumberland & Pa. R. R. Co.,* 41 Md. 343; *Sperling v. Terry,* 214 Md. 367, 135 A. 2d 309. Such written language embodying the terms of an agreement will (except in circumstances not here shown) govern the rights and liabilities of the parties, irrespective of their actual intent or individual interpretations. *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272; *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A. 2d 687. A "Terry" shop is squarely and clearly within the "Adeline" or "Darling" type of operation exception stated in Bishins' lease. The testimony of Messrs. Bishins and Scuderi as to their respective interpretations of the clause is therefore immaterial. Since under the clear and unambiguous language of the Bishins lease, the lease of another store in the same shopping center for use as a "Terry" shop is clearly permissible, and Mr. Bishins' suit to enjoin the making and carrying out of that lease is not maintainable.

The appellant attacks the use of the term "and/or" in the lease and claims that it creates an ambiguity. Whether or not this term, which has come into wide use, merits the grammatical opprobrium which has been heaped upon it, we cannot see that it creates any ambiguity here. The clause in question applies to an "Adeline" type of operation and a "Darling" type of operation or to either of them. They are equivalents of each other, and a "Terry" shop is the equivalent of each of them.

The appellant's objection to the form of procedure adopted —a motion to dismiss at the end of the plaintiff's case—is also unavailing. Such a motion is not proper in equity practice in this state. However, "a respondent may, of course, decline to submit evidence and submit the case for final determination, but he cannot move to dismiss and then go on with his evidence if the court rules against him. The Chancellor passes upon the whole case as submitted. The inquiry is simply whether the facts justify the relief prayed in the

464

bill, applying the proper principles of law to the facts so established." *Phillips v. Phillips,* 215 Md. 28, 35, 135 A. 2d 849. Under that decision a motion to dismiss in equity amounts to a submission for final determination of the case as it stands when the motion is offered. Upon the submission so made here, we think that the Chancellor reached the correct conclusion in sustaining the motion to dismiss the bill.

*Order affirmed, with costs.*