## RAPPOLD ET AL. *v.* RAPPOLD

[No. 112, September Term, 1960.]

132

*Decided January 13, 1961.*

*The cause was argued before* BRUNE, C. J., *and* HENDER-
SON, HAMMOND, PRESCOTT *and* HORNEY, JJ.

*Maurice M. Bassan,* with whom were *John P. Wade* and
*Bassan & Shapiro* on the brief, for appellants.

*John G. Noppinger,* for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal is from a decree requiring Fred M. Rappold
and John A. Rappold (the "surviving trustees"), individually

and as surviving trustees, to account to Nellie M. Rappold (one of the "income beneficiaries"), widow of Charles C. Rappold, a deceased trustee, for one-third of the income from the trust estate, pursuant to the *agreement* of October 30, 1957, purporting to modify, alter and amend the terms and provisions of a subsisting *trust* created by a deed of trust executed on December 18, 1937.

The deed of trust had the effect of reconveying to three brothers—Charles, Fred and John—as trustees for themselves and others, the real property previously owned by them as individuals, which, in a simultaneous transaction, they had conveyed to straw parties for the express purpose of creating the trust estate involved in this controversy.

The income provisions of the original trust agreement empowered and authorized the trustees to collect the rents, profits and income and pay the same to the three brothers as beneficiaries, in equal shares during their joint lives. Upon the death of the first of the brothers, the income was payable to the two surviving beneficiaries in equal shares for and during the term of their joint lives. Upon the death of the second of the brothers, the income was payable to the third and last surviving beneficiary for and during the term of his life. And, upon the death of the last survivor, the trust was to terminate.

Under the trust agreement, the trustees also had broad powers to sell, mortgage, lease or otherwise dispose of any and all of the trust property and pay the proceeds therefrom to the three brothers in equal shares absolutely. But in the event of a sale or mortgage after the death of any one or two of the brothers, then the share of the sale or mortgage proceeds of the brother so dying was payable to his widow provided she be living and had not remarried. If, however, the widow should die or remarry, then such share was payable to the child or children of the deceased brother in equal shares, or, if the child or children should be dead, then the share of the deceased child was payable to the child's children *per stirpes*. And, in the event one of the brothers should die leaving no children or grandchildren living, and the widow be dead or disqualified by remarriage, then the distributive

share of the deceased brother was payable to the survivors or survivor of them in equal shares or in its entirety, as the case might be.

The termination clause provided that the trust should cease from and after the death of the last surviving brother and that the residue of the property should be divided into three equal shares. One share of the residue was vested in Edward and Doris—children of Charles—their heirs, personal representatives and assigns.[1] One share was vested in Evelyn, wife of Fred, provided she survived all three brothers and had not remarried, but if she should die or remarry before all three of the brothers had died, then this share was to vest in the *child or children* of Fred, their heirs, personal representatives and assigns. And one share was vested in Frieda, wife of John, provided she also survived all three brothers and had not remarried, and, in the event of either contingency, the share was vested in the *child or children* of John, their heirs, personal representatives and assigns.

The appellants claim it was not realized until after the death of Charles on September 20, 1957, that the trust agreement of 1937 had made no provision for the payment of any part of the income from the trust estate to the widow or children of a brother who should die during the existence of the trust. This oversight, as the preliminary recitals in the amendatory agreement of 1957 indicate, was the principal reason for the desire to alter, change and modify the terms and provisions of the original trust agreement of 1937. The recitals, in addition to asserting that it was the real intention of the parties to pay one-third of the income to the widow and children of a brother who should die pending the termination of the trust instead of paying the share of a deceased brother to the surviving brothers or brother, also declare that the trust agreement did not express the real intention of the settlors with respect to the distribution of the sale and mortgage proceeds during the existence of the trust and the vesting of title to the

1. When the deed of trust was executed in December of 1937 Charles was a widower. In 1939 he married Nellie M. Rappold. She survived Charles and, under the terms of the agreement of 1957, is now one of the income beneficiaries.

residue of the trust property after the termination of the trust. There was a final recital to the effect that all of the parties in interest—Fred and John, individually and as surviving trustees, Nellie, widow of Charles, Evelyn, wife of Fred, Emilie (whom John had married after the death of Frieda), Edward and Doris, children of Charles, Virginia, only child of Fred, Adele and Carl, children of John, and the straw parties to the deed of trust—desired "to give effect to the real intentions of the parties" by amending the income, distribution and termination provisions of the trust agreement. But there was also testimony by the attorney, who prepared both instruments, to the effect that the agreement of 1957 in his opinion represented a basic *change of mind* and not a rephrasing of the *real intentions* of the parties.

The alterations wrought by the amendatory agreement with respect to the *payments of income,* were such as to provide that upon the death of the first of the brothers—*i.e.,* Charles, who was then dead—one-third of the income is payable to the widow of the one so dying during the existence of the trust, that the payment thereof is to cease upon her death or upon the termination of the trust, whichever occurs first, and that should the widow die before the trust terminates, the third of income is payable to the surviving children of the brother first to die; an identical provision is to become effective upon the death of the second of the brothers; and upon the death of the third and last of the brothers the trust is to terminate. Under the deed of trust, as herein noted, the income was payable to the surviving brothers or brother as the case might be.

Changes were also made in the provisions relating to the distribution of the proceeds from sales and mortgages before termination and in the clause concerning the vesting of the residue of the trust property when the trust is finally terminated, but under the view we take of this case, it is unnecessary to set forth in detail the modifications therein made.

The appellants' first attack on the amendatory agreement is to the effect that three of the parties who signed it—Fred, John and Adele—did not know what they were signing. The contention has no merit.

The agreement was signed by all of these parties without fraud or duress, and without any showing of incapacity. The only evidence offered to show incapacity was the self-serving testimony of Fred that he was recovering from a heart attack at the time he signed the agreement, and that the prescribed sedation had made him "dopey." All three of the parties had an opportunity to read the agreement or have it read to them had they so desired before signing it. That they did not bother to do so is strong evidence of indifference on their part. As was said in *Ray v. Wm. G. Eurice & Bros.*, 201 Md. 115, 93 A. 2d 272 (1952), at p. 125: "The law is clear, absent fraud, duress, or mutual mistake, that one having the capacity to understand a written document who reads and signs it, or without reading it or having it read to him, signs it, is bound by his signature in law, at least." See also *Kolker v. Gorn*, 202 Md. 322, 96 A. 2d 475 (1953); *Rossi v. Douglas*, 203 Md. 190, 100 A. 2d 3 (1953); *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 137 A. 2d 687 (1958); *Litteral v. Houser*, 221 Md. 403, 158 A. 2d 75 (1960); *Bishins v. St. Barnabas Corp.*, 221 Md. 459, 158 A. 2d 94 (1960); 5 M.L.E., *Contracts*, § 74.

There is no reason why the rule laid down in the *Ray* case, *supra*, should not be applied to the facts of this case. The record is clear that there was no fraud or duress, and if there was a mistake it was attributable to the negligence of the three parties. Moreover, the complaining parties failed to carry the burden of showing incapacity. See 5 M.L.E., *Contracts*, § 85, and the cases cited therein.

The next contention is that the agreement was "illegal, void and of no effect" because it purports to divest possible beneficiaries and remaindermen under the trust agreement of all rights in the corpus of the trust estate. As hereinbefore indicated, we think we do not reach the precise question posed at this time.

In *In Re Clarke's Will*, 198 Md. 266, 81 A. 2d 640 (1951), an infant by his next friend sought a declaration of his interest in the estate of his grandfather. After holding that the infant had such an interest as required the substituted trustee

under the will of the grandfather to account and post a bond, this Court said at p. 273:

"It has been held that courts in declaratory judgment proceedings will not construe wills on points not in controversy, or not necessary to the determination of the controversy presented * * *. The mere fact that future interests are involved will not defeat the power to declare rights, but the power should be cautiously exercised where the questions of devolution may never arise and the rights of unborn persons may be affected. * * * All questions not now decided are, of course, reserved for determination as the need may arise."

Cf. *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 56 A. 2d 144 (1947).

We see no reason why the reasoning in the *Clarke* case, as applied to the construction of a will, should not be applicable in the instant case involving future and present interests in a trust estate. The decree appealed from below—though the opinion of the court appears not to have been—was definitely limited to an order requiring the surviving trustees, in their fiducial as well as individual capacities, to account to Nellie M. Rappold as an income beneficiary for the *income* received by the surviving trustees since the death of Charles, who was one of the original beneficiaries. We think the decree as limited should be affirmed on the ground that the surviving brothers, who, under the original trust agreement, had the sole and exclusive right to all of the income from the trust estate, could, and did by the execution of the amendatory agreement, effectively assign one-third of the income to the widow of Charles for so long as she shall live or until the termination of the trust estate, whichever shall first occur.

Except under special circumstances not present here, there is no reason why a beneficiary may not assign his right to income, or a portion thereof, to another. See 1A Bogart, *Trusts and Trustees*, § 188, where it is said that "[i]n the absence of provisions in the trust instrument or statutes to the contrary, the cestui que may alienate his interest as freely

as he might a legal estate or interest." See also *Blair v. Commissioner*, 300 U. S. 5 (1937). We note that this is not a spendthrift trust. See *Kirkland v. Mer.-Safe Deposit & Trust Co.*, 218 Md. 17, 145 A. 2d 230 (1958). There are no provisions in the trust agreement prohibiting assignment, nor do we know of any statutory prohibition forbidding an assignment of this sort. We therefore hold that the agreement of October 30, 1957, constituted a valid assignment of a one-third part of the trust income to Nellie M. Rappold, and for that reason, the decree will be affirmed. All questions presented by this appeal but not herein decided are reserved for future determination should the necessity therefor arise.

*Decree affirmed; the appellants to pay the costs.*