**Larry CORNELL**

v.

**COUNCIL OF UNIT OWNERS HA-
WAIIAN VILLAGE CONDO-
MINIUMS, INC., et al.**

**No. CIV. Y–96–4037.**

United States District Court,
D. Maryland.

Nov. 5, 1997.

Laurence A. Marder, Baltimore, MD, for Plaintiff.

Norberto G. Lacson, pro se; Warren D. Stephens, Baltimore, MD; James Sutherland Aist, Baltimore, MD; Alan L. Briggs, Washington, DC, for Defendants.

### MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

#### I.

This case arises from injuries sustained by Plaintiff Larry Cornell, a resident of the District of Columbia, when he allegedly slipped and fell on a patch of ice in the parking lot of the Royal Hawaiian Condominium in Ocean City, Maryland on December 31, 1993. Plaintiff owned a unit at the Royal Hawaiian which he used as a vacation home, and has sued the condominium's governing body and various individuals and corporations involved in the design, construction, and maintenance of the condominium. Plaintiff alleges that the Defendants were negligent in the maintenance and design of the Royal Hawaiian, resulting in faulty drainage leading to the ice formation causing his injuries. Complete diversity exists among the parties.

Defendants Council of Unit Owners–Hawaiian Village Condominiums, Inc. ("the Council") and K & W Management, Inc. ("K & W") seek summary judgment on the affirmative defense of waiver. The Council alleges Plaintiff waived his right to sue it for failure to maintain the premises when he became a unit owner, automatically enrolling him in the Council and subjecting him to its bylaws, which limit the Council's liability for personal injuries. K & W contends it is entitled to the benefit of this affirmative defense as the Council's agent. Plaintiff responds that the Council's bylaws do not unequivocally express an intent to limit liability for its negligence; that the limitation of liability is void as against public policy; that K & W is not derivatively immune from suit as the Council's agent; and that the Defendants have waived their right to assert this defense by failing to plead it as an affirmative defense in accordance with FED.R.CIV.P. 8(c).

#### II.

The Court must first consider whether Defendants waived their affirmative defense of waiver by failing to plead it in accordance with FED.R.CIV.P. 8(c). A federal court exercising diversity jurisdiction must apply applicable state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The issue of when affirmative defenses must be pleaded, however, is a procedural issue governed exclusively by federal law. *See Taylor v. United States,* 821 F.2d 1428, 1432 (9th Cir.1987).

Generally, affirmative defenses are waived unless raised in a responsive pleading. *Id.* Failure to do so, however, "does not always result in waiver." *Charpentier v. Godsil,* 937 F.2d 859, 863 (3d Cir.1991). Failure to raise an affirmative defense until the summary judgment phase of a case does not waive the defendant's ability to assert the

defense absent a showing of prejudice to the plaintiff. *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993); *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1374 (3d Cir. 1993) (holding defense of immunity first raised in summary judgment motion not waived); *Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1445 (6th Cir.1993) (same).

▮▮▮ Although the summary judgment phase may not be the most appropriate time for raising this affirmative defense, Plaintiff cannot reasonably claim that unfair prejudice resulted from Defendants' failure to plead waiver in their answer. A defendant does not waive an affirmative defense if it is raised at a "pragmatically sufficient time", and the plaintiff is not prejudiced. *Charpentier,* 937 F.2d at 864 (permitting immunity defense to be raised in pretrial brief). Plaintiff has filed a comprehensive response to the pending summary judgment motion, demonstrating his thorough understanding of the principles of law and fact involved. Plaintiff's response addresses and refutes each relevant aspect of the waiver defense, drawing upon all facts relevant to the defense. Under these circumstances, Plaintiff cannot complain of prejudice or lack of notice. Further, the waiver defense involves no factual issues. *See id.* Finally, the Court has the discretion to treat the defense as an amendment of the answer under FED.R.CIV.P. 15(a) absent a showing of prejudice. *See Smallwood v. United Air Lines, Inc.,* 661 F.2d 303, 306 (4th Cir.1981); *Charpentier,* 937 F.2d at 864. Plaintiff's thorough response to the waiver defense demonstrates that he suffered no prejudice. The Court will therefore consider Defendants' waiver defense because Defendants raised the defense at a "pragmatically sufficient time."

### III.

#### A.

Defendants' waiver defense arises from Plaintiff's ownership of a Royal Hawaiian unit which subjected him to the Council's bylaws. The relevant bylaw in this case is Article VIII, § 6, which states in part:

*Limitation of Liability.* The Council shall not be liable … for injury or damage to persons or property caused by the elements, or by the Unit Owner of any unit, or any other person, or resulting from electricity, water, snow, or ice, which may leak or flow from any portion of the general or limited common elements, or from any pipe, drain, conduit, appliance, or equipment.

The condominium declaration filed by Royal Hawaiian, in accordance with MD.CODE ANN., REAL PROP. § 11–102 (1996 & Supp.1996), defines "common elements" to include parking areas (Def.'s Mot. Ex. 1, ¶ 4(b)).

▮▮▮ The Council maintains that this exculpatory clause acts to insulate the Council from liability for Plaintiff's personal injuries arising out of its negligence. Maryland presumes exculpatory clauses to be valid based upon a public policy favoring freedom of contract. *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 259, 686 A.2d 298 (1996). Because such clauses often bring about harsh results, Maryland narrowly construes exculpatory clauses, and will not construe such clauses "to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms." *Id.* at 261–62, 686 A.2d 298 (quoting *Crockett v. Crothers,* 264 Md. 222, 227, 285 A.2d 612 (1972)). As the *Adloo* court stated, the clause need not use the word "negligence" or any other "magic words", but it must be unambiguous and understandable before it is given effect. *Id.* at 264, 266, 686 A.2d 298.

The Maryland Court of Appeals has addressed this issue in several cases. In *Adloo,* realtor and seller entered into a "lockbox" agreement allowing the sellers' home to be shown in their absence. The listing agreement between the realtor and sellers contained an exculpatory clause absolving the realtor and his agents from "vandalism, theft or damage of any nature whatsoever to the property," and excused the realtor from liability "for the custody of the property, its management, maintenance, upkeep, or repair." *Id.* at 257, 686 A.2d 298. The agreement further stated that the broker and his agents were not "an insurer against the loss

of personal property; [seller] agrees to waive and releases [broker] and his agents ... from any responsibility therefore [sic]." *Id.* at 258, 686 A.2d 298. The court found this language to be ambiguous under Maryland's objective theory of contract interpretation, and held that the clause did not operate to exculpate the broker's negligence regarding the burglary of the seller's house through the lock-box device. *Id.* at 267–68, 686 A.2d 298. The court specifically noted that the clause did not clearly address loss of property resulting from the broker's negligence, and could therefore be interpreted to encompass only those losses occurring without the broker's negligence. *Id.*

Similarly, in *Crockett v. Crothers*, 264 Md. 222, 285 A.2d 612 (1972), a homeowner sued a contractor who broke a water main while constructing a sewer system according to a co-defendant engineer's specifications. The contract between the engineer and contractor provided that the contractor's obligations did "not extend to the liability of [engineer], his agents or employees arising out of (a) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications or (b) the giving of or the failure to give directions or instructions by the [engineer], his agents or employees, provided such giving or failure to give is the primary cause of injury or damage." *Id.* at 228, 285 A.2d 612. The court upheld the trial court's refusal to honor the exculpatory clause, finding that the clause did not insulate the contractor from his own negligence either expressly or by equivalent language. *Id.*

The Maryland Court of Appeals, in *Home Indem. Co. v. Basiliko*, 245 Md. 412, 226 A.2d 258 (1967), construed an exculpatory clause contained in a lease agreement. The clause absolved the landlord from liability "for loss of or damage to property of Tenant in said building caused by fire or other casualty, *or by acts of negligence of co-tenants or other occupants of said building or any other person, or by rain or snow or water or steam that may leak into or flow from said building through any defects in the roof or plumbing or from any other source.*" *Id.* at 414, 226 A.2d 258 (emphasis supplied). The court

held that the clause absolved the landlord of liability for a leaky air conditioning without considering the issue of negligent maintenance. *Id.* at 417, 226 A.2d 258. Finally, in *Heat & Power Corp. v. Air Pdcts. & Chem., Inc.*, 320 Md. 584, 578 A.2d 1202 (1990), the court found an exculpatory clause in a construction contract ambiguous because it did not specifically indemnify the breaching party against their own negligence. *Id.* at 588, 593, 578 A.2d 1202.

■ The language of the disputed clause in *Basiliko* is quite similar to the clause in this case, and the Court finds *Basiliko* to be controlling. Here, as in *Basiliko*, the clause purports to release the Council for injury or damage to persons or property caused by the elements, or by any unit owner, or any other person, or resulting from electricity, water, snow, or ice. Although the clause does not use the word "negligence", under *Adloo* any substantial equivalent will suffice, and the broad language of the clause exempting the Council from liability for personal injuries caused by "any other person" evinces the Council's clear intention to absolve itself from liability for its negligent actions. Accordingly, this case is distinguishable from *Adloo* and *Crockett* because the clause's language broadly covers all personal injuries caused by any person and by ice. Under *Basiliko*, this clause expresses the Council's intent to exculpate itself from liability for its own negligence.

Plaintiff, however, cites three cases in this Court to bolster his contention that the clause is ambiguous and unenforceable. In *Commercial Union Ins. Co. v. Bohemia River Assoc. Ltd.*, 855 F.Supp. 802 (D.Md.1991), the Court held that under Maryland law, an exculpatory clause in a slip rental agreement was ineffective because it failed to mention negligence. *Id.* at 806. *Commercial Union* is distinguishable because it did not contain an exculpatory clause absolving the Council from liability for injuries caused by "any other person." In *Rogers v. Yachts America, Inc.*, 1983 A.M.C. 417 (D.Md.1982), the Court construed a clause similar to the one in this case as insufficient to indicate the parties' intent to absolve a marina from liability for its own negligence under Maryland law. *Id.*

at 420. The Court's consideration of the issue in *Rogers,* however, is in the form of *obiter dictum,* as the issue was not squarely before the Court. Rather, the Court relied upon the plaintiff's failure to meet his burden of proving negligence in granting judgment for the defendants. *Id.* at 420–21. Finally, in *Doubleday v. Corinthian Yacht Club,* 1979 A.M.C. 2578 (D.Md.1973), the Court refused to enforce an ambiguous exculpatory clause under Maryland law, finding that the clause did not mention negligence specifically, and that the structure of the agreement at issue rendered the clause ambiguous. *Id.* at 2583–84. *Doubleday,* however, was decided without the benefit of *Adloo,* which specifically states that the word "negligence" need not be used. Further, the structural problems present in the agreement at issue in *Doubleday* are not present here.

In short, the Court finds under Maryland law that the exculpatory clause at issue in this case unambiguously releases the Council from liability for its own negligence.

### B.

Plaintiff also contends the exculpatory clause is unenforceable because the Council did not adequately explain its existence or effect before the closing on Plaintiff's condominium. In support of his opposition to Defendants' motion, Plaintiff includes an affidavit stating that he cannot recall receiving a copy of the Council's bylaws before purchasing his condominium; that he was not asked or given an opportunity to review these documents before executing the purchase contract or at the closing; that he did not know he was bound by the provisions of the bylaws, including the exculpatory clause; that he was merely told a stack of papers related to the condominium; and that he was never informed of the exculpatory clause's existence (Pl.'s Opp. Ex. 1). Plaintiff now claims, in effect, that his ignorance of the exculpatory clause renders the clause inoperative.

Plaintiff initially concedes that Maryland courts have not addressed the precise question of whether an exculpatory clause in a condominium association's bylaws is binding on a person who has no knowledge of the clause's existence, scope, purpose or meaning at the time of purchase. Plaintiff does, however, cite the case of *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1972), in which the court indicated that the terms of an agreement exculpating a defendant from liability for his own negligence must be known or reasonably knowable to a person in the plaintiff's position.[1] *Id.* (quoting PROSSER ON TORTS § 67, at 458 (3d ed.1964)). This principle is in accord with other jurisdictions, and with the RESTATEMENT (SECOND) OF TORTS § 496B cmt. c.

Under the prevailing view, a plaintiff must assent to an express agreement assuming the risk of harm from the defendant's negligence, and where the defendant drafts the agreement, and the plaintiff's role in the process is a mere recipient, the plaintiff must also understand the terms of the agreement. The classic situation where an exculpatory agreement is rendered unenforceable by the plaintiff's lack of knowledge as a mere recipient of a document drafted by the defendant is a ticket which plaintiff receives at the entrance to a public parking garage, which plaintiff reasonably believes to be a mere receipt and which plaintiff accepts without reading, stating in fine print that the garage is not liable for damage to the car and that no bailment is created. *Cf. id.* ill. 1. Under these circumstances, the Restatement takes the view that the ticket's exculpatory clause is invalid. *Id.; see also Murphy v. North American River Runners. Inc.,* 186 W.Va. 310, 412 S.E.2d 504, 510 (1991); *Yates v. Chicago Nat'l League Ball Club, Inc.,* 230 Ill.App.3d 472, 172 Ill.Dec. 209, 220, 595 N.E.2d 570, 581 (1992) (fine print on back of Chicago Cubs baseball ticket exempting ball club from liability for its negligence did not constitute valid express assumption of risk defense).

---

1. The Maryland Court of Appeals declined to follow the *Winterstein* decision as it related to the adoption of a six-factor test for determining whether an exculpatory clause is void as against public policy. *See Wolf v. Ford,* 335 Md. 525, 644 A.2d 522 (1994). The Court of Appeals did not address *Winterstein*'s statement regarding a plaintiff's knowledge of his express assumption of risk of defendant's negligence.

Unlike the Restatement illustration or *Yates, supra,* Plaintiff cannot claim his ignorance of the Council's bylaws insulates him from the exculpatory clause's effect. Under Maryland law, absent fraud, duress, or mutual mistake, one who signs a contract without first reading it to ascertain its contents cannot avoid the contract's effect by pleading ignorance. *Kolker v. Gorn,* 202 Md. 322, 331, 96 A.2d 475 (1953). In *Kolker,* the Maryland Court of Appeals rejected the appellee's argument that he had been "forced" to sign a mortgage without reading it. *Id.* In *Comegys v. Clarke,* 44 Md. 108 (1876), the court enforced a mortgage contract where the mortgagor had not read the document before signing it, and had simply been told that her signature was needed on another paper. *Id.* at 111. *See also Rappold v. Rappold,* 224 Md. 131, 136, 166 A.2d 897 (1961) (holding party who signed amendatory trust agreement without first reading it was bound thereby where adequate opportunity to read it prior to signing existed); *Durrell v. Parachutes Are Fun, Inc.,* 1987 WL 18117 (Del.Super.Ct.1987) (holding under Maryland law that party who signed contract containing exculpatory clause without first reading it was bound thereby).

Plaintiff's affidavit states he received a "stack" of documents on the date of closing. Although Plaintiff claims in his affidavit that the realtor did not mention the binding effect of the documents or tell Plaintiff that the documents contained the Council's bylaws, Plaintiff's own evidence demonstrates that he received documents before the closing which presumably contained the Council's bylaws, satisfying Maryland's statutory requirement that a copy of the condominium's bylaws be provided at or before the closing on a condominium. MD.CODE ANN., REAL PROP. §§ 11–126(a)(1) & (b)(2) (1996). Plaintiff may not have had much time to review this documentation, but he had the opportunity to conduct a cursory inspection of the documents before closing on his condominium. Had Plaintiff done so, he could have discovered the bylaws and the exculpatory clause. Plaintiff's affidavit does not establish fraud, mutual mistake or duress, and such defenses are unavailable under the cases cited above. Plaintiff's ignorance of the documents at issue does not insulate him from the exculpatory clause. To hold otherwise would invite contracting parties to ignore deliberately the papers they sign or otherwise adopt in the hope of later defeating an objectionable provision.

Plaintiff is also precluded from arguing his ignorance excused him from the exculpatory clause's reach under traditional principles of assumption of risk espoused in *Winterstein,* which require an exculpatory clause to be known *or reasonably knowable.* Plaintiff's evidence fails to establish that the exculpatory clause at issue was not reasonably knowable to him at the closing. It merely establishes his opportunity to inspect important documentation related to the purchase of his condominium, and his failure to do so. A reasonable person would be expected to inspect the documents related to a transaction as important as the purchase of a home. As a person with prior experience buying homes, Plaintiff should have appreciated the importance of the documents he received and adopted by closing on his condominium. Plaintiff cannot plead ignorance as an excuse under these circumstances.

### C.

Plaintiff next argues the exculpatory clause is void as against Maryland public policy. Plaintiff contends the clause is barred by MD.CODE ANN., CTS. & JUS. PROC. § 5–401 (Supp.1997) (formerly § 5–305 of that article), and argues the clause is generally violative of Maryland public policy.

### 1.

Section 5–401 of the Maryland Courts and Judicial Proceedings Article states in relevant part:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relating to the construction, alteration, repair, or maintenance of a building, structure, appurtenance or appliance, including moving, demolition and excavating connected with it, purporting to indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property caused by or resulting from the sole negligence of the promisee or indem-

nitee, his agents or employees, is against public policy and is void and unenforceable. MD.CODE ANN., CTS. & JUD. PROC. § 5–401 (Supp.1997). Plaintiff contends that the exculpatory clause at issue here is void under this section because the Council's bylaws were issued incident to the condominium's construction and contain provisions regarding maintenance of the condominium.

 The starting point for interpreting a Maryland statute is the statutory language. If the language is clear and consistent with the statutory purpose, further exploration is unnecessary. *State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990). If the statute is ambiguous, the "cardinal rule" of Maryland statutory construction is to ascertain the legislature's intent. *Id.* It is not clear from the face of the statute whether or not it applies to agreements solely concerning the maintenance of a building, or only to maintenance agreements incident to a construction contract. Maryland courts have generally interpreted the clause in the context of construction agreements. For example, in *Heat Power Corp. v. Air Pdcts. & Chem., Inc.,* 320 Md. 584, 578 A.2d 1202 (1990), the court construed the statute as voiding "any covenant, promise, agreement, or understanding *in a construction contract*" purporting to release the promisee from liability occasioned solely by his negligence. *Id.* at 592–93, 578 A.2d 1202 (emphasis added) (citing *Bethlehem Steel Corp. v. G.C. Zarnas & Co.,* 304 Md. 183, 195, 498 A.2d 605 (1985)); *see also CSX Transp., Inc. v. Mass Transit Admin.,* 111 Md.App. 634, 645–47, 683 A.2d 1127 (1996) (finding this section did not bar recovery under a separate indemnification not in connection with or collateral to a *construction* agreement), *cert. granted,* 344 Md. 569, 688 A.2d 447 (1997); *Helm v. Western Md. Ry. Co.,* 838 F.2d 729 (4th Cir.1988) (this section applied to void indemnification provision when injury occurred while railroad was actively engaged in construction); *Brown v. Baltimore & Ohio R.R.,* 805 F.2d 1133 (4th Cir. 1986) (holding section inapplicable where indemnification agreement had nothing to do with construction).

 In the absence of a clearly controlling state decision, a federal court will attempt to determine how the state's highest court would rule if confronted with the same issue. *Sherby v. Weather Bros. Transfer Co.,* 421 F.2d 1243, 1244 (4th Cir.1970). If Maryland law controls, the Court will apply a rule it reasonably believes the Maryland Court of Appeals would follow. *Kirby v. Chrysler Corp.,* 554 F.Supp. 743, 749 (D.Md.1982). The Maryland cases cited above suggest that § 5–401 only applies to void exculpatory clauses in or in connection with a construction agreement. The statute's legislative history further supports this interpretation. The Maryland senate bill proposing this section states that its enactment was "for the purpose of providing that certain Construction Industry Indemnity Agreements are void and unenforceable." 1974 Md. Laws ch.634, 2139. While the statement of legislative intent is not a model of clarity, it makes no mention of maintenance agreements in condominium association bylaws. Had the legislature wished to insulate condominium owners from exculpatory clauses in the bylaws of condominium associations, it could have done so in the Maryland Condominium Act, as it did for residential leases. *See* MD.CODE ANN., REAL PROP. § 8–105 (1996).

The Council's bylaws are not related to construction, and did not issue as part of the construction of Plaintiff's condominium unit. Rather, they merely delineate certain responsibilities of the Council regarding maintenance. The bylaws were not issued as part of a construction agreement, or any agreement directly related or collateral to a construction agreement. Because the Council's bylaws enjoy a highly attenuated relationship to the statute's emphasis on construction agreements, a reviewing court should be unwilling to strike the exculpatory clause on public policy grounds. *Finci v. American Cas. Co.,* 323 Md. 358, 378, 593 A.2d 1069 (1991). Finally, the statute's legislative history strongly suggests its inapplicability to a condominium's bylaws requiring the council of unit owners to maintain the common areas. Following well-established Maryland law that a statute's language must be construed to effect the legislature's intent, the

Court holds that § 5–401 only applies to construction or construction-related exculpatory agreements. *Cf. Brainard v. McKinney,* 220 Ga.App. 329, 469 S.E.2d 441, 442 (1996) (holding that similar Georgia statute did not apply to exculpatory clauses in home inspection agreements).

2.

Plaintiff submits the exculpatory clause is also invalid because it is against Maryland public policy. Specifically, Plaintiff argues his agreement to the clause is the result of grossly unequal bargaining power, that condominiums are an appropriate subject for regulation as evinced by the Maryland General Assembly's regulation of condominiums, and that Maryland has a strong public interest in protecting prospective purchasers of condominiums.

■ The seminal Maryland case examining the circumstances in which an exculpatory clause is violative of public policy is *Wolf v. Ford,* 335 Md. 525, 644 A.2d 522 (1994). While reiterating that exculpatory clauses are generally presumed valid in Maryland, the Maryland Court of Appeals listed three general categories of exceptions to this rule in which a strong public policy will void such a clause. First, a clause excusing one for intentional, reckless, wanton, or gross injuries is prohibited. *Id.* at 531, 644 A.2d 522. Second, clauses resulting from grossly unequal bargaining power are also void. *Id.* Third, public policy will void exculpatory clauses in "transactions affecting the public interest." *Id.* at 532, 644 A.2d 522. These transactions include public service obligations, such as public utilities, common carriers, innkeepers, and public warehousemen, and other transactions "so important to the public good that an exculpatory clause would be 'patently offensive.'" *Id.* (citing *Maryland–Nat'l Cap. Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 606, 386 A.2d 1216 (1978)). This standard is quite strict, and Maryland courts are reluctant to strike down exculpatory clauses on public policy grounds. *Wolf,* 335 Md. at 532, 644 A.2d 522. The *Wolf* court explicitly rejected a rigid formula for determining whether a certain transaction is within the public

interest so as to void an exculpatory clause, stating that "[t]he ultimate determination ... must be made considering the totality of the circumstances of any given case against the backdrop of current societal expectations." *Id.* at 535, 644 A.2d 522.

■ The facts of this case do not warrant holding that the exculpatory clause is invalid as against Maryland public policy. First, this contractual provision is not the product of grossly unequal bargaining power. Plaintiff argues the lack of opportunity to negotiate, the relatively inconspicuous nature of the exculpatory clause, and the absence of an opportunity to pay an extra fee to hold the Council liable for its own negligence are indicative of a lack of bargaining power. As in *Wolf,* Plaintiff does not appear to have been solicited by the Council and he had other condominium options available to him if he was dissatisfied with the terms of the Council's bylaws. He was not compelled to purchase this particular condominium. *Cf. Wolf,* 335 Md. at 536, 644 A.2d 522; *Baker v. Roy H. Haas Assoc., Inc.,* 97 Md.App. 371, 380–81, 629 A.2d 1317 (1993) (home inspection agreement not product of unfair bargaining power where plaintiff presented no evidence that alternative home inspection companies were unavailable). Further, Plaintiff had at least a minimal opportunity to inspect the documents prior to closing, and the fact that he did not do so does not constitute unequal bargaining power.

Second, Maryland law does not support a conclusion that the exculpatory clause is void as against Maryland public policy. Although *Wolf* states that no rigid formula exists to determine whether an exculpatory clause is violative of public policy, the Court may consider the factors set forth in *Tunkl v. Regents of the Univ. of Cal.,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963) as adopted by *Winterstein,* which states:

Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a

matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Winterstein,* 16 Md.App. at 137, 293 A.2d 821 (quoting *Tunkl,* 32 Cal.Rptr. at 37–38, 383 P.2d at 445–46 (footnotes omitted)).

These factors do not support Plaintiff's argument. Although the General Assembly has seen fit to regulate condominiums, *see* Maryland Condominium Act, MD.CODE ANN., REAL PROP. §§ 11–101 et seq. (1996 & Supp. 1997), unlike the Maryland code provisions pertaining to residential leases, the Act contains no indication of a legislative intent to restrict this type of exculpatory clause. *See Kelley v. Astor Investors. Inc.,* 123 Ill.App.3d 593, 78 Ill.Dec. 877, 881, 462 N.E.2d 996, 1000 (1984) (finding no such legislative intent in the Illinois Condominium Act), *aff'd,* 106 Ill.2d 505, 88 Ill.Dec. 620, 478 N.E.2d 1346 (1985); *cf.* MD.CODE ANN., REAL PROP. 8–105 (1996). As discussed above, the Council did not possess an unfair bargaining position.

While Plaintiff was, to some extent, subject to the control of the Council due to the Council's role as drafter of the bylaws, he also reaped considerable benefits from the Council's assumption of duties related to the condominium, such as maintenance and management services. Moreover, the Court of Appeals' decision in *Wolf* is instructive. As in *Wolf,* reasonable purchasers of condomini-

um units generally understand that some risk is involved, and that condominium associations place important restrictions on the owner, including noise restrictions, vehicle restrictions, and guest restrictions. *Cf. Wolf,* 335 Md. at 537, 644 A.2d 522. As in *Wolf,* Plaintiff voluntarily chose to purchase a condominium. Under these circumstances, the exculpatory clause is not so patently offensive in light of societal expectations to justify holding it violative of public policy.

## IV.

K & W argues that it is entitled, as the Council's agent, to the protection of the exculpatory clause in the Council's bylaws. The Council had delegated its management duties to K & W by agreement dated February 10, 1993.

K & W's argument is without merit. As stated above, Maryland narrowly construes exculpatory clauses. Article VIII, § 6 of the Council's bylaws employs no language evincing its intent to extend the clause to its agents. To the extent that § 6 is ambiguous regarding this issue, it will be construed against the Council as drafter of the clause under the principle of *contra proferentum. King v. Bankerd,* 303 Md. 98, 106, 492 A.2d 608 (1985). In the absence of clear language, it is well-settled in Maryland that an agent is liable to third parties injured by his negligence in the improper performance of a duty. *Consolidated Gas Co. v. Connor,* 114 Md. 140, 156, 78 A. 725 (1910). More recently, the Maryland Court of Special Appeals reiterated this principle, stating that "an agent may be liable for his own acts of negligence regardless of whether the principal's identity has been disclosed." *E.G. Rock, Inc. v. Danly,* 98 Md.App. 411, 430, 633 A.2d 485 (1993) (citing *Smith v. Sherwood,* 308 F.Supp. 895, 899 (D.Md.1970)).

K & W, however, asserts that in Maryland "an agent is entitled to the same defenses" as the principal (citing *Howard Cleaners of Baltimore, Inc. v. Perman,* 227 Md. 291, 176 A.2d 235 (1961)). *Howard Cleaners* does not stand for this broad proposition, but rather holds that "[i]n an action against an agent upon a contract between a

third person and a principal, to which the agent is a party, the agent has all the defenses which arise out of the transaction itself." *Howard Cleaners,* 227 Md. at 295, 176 A.2d 235. K & W is not a party to the contract between Plaintiff and the Council containing the exculpatory clause. Accordingly, K & W is not, as the Council's agent, entitled to the defenses of its principal arising out of this incident.

Finally, the management agreement between the Council and K & W is equally unavailing. K & W argues that Item Fifth in the agreement, stating that "[e]verything done by the ·Agent [K & W] pursuant to contract terms hereof shall be done as Agent for the Association [the Council] ...", entitles K & W to the benefit of the bylaws' exculpatory clause. This argument suffers two serious defects. First, as stated above, exculpatory clauses are strictly construed, and absent express language in the exculpatory clause extending its reach to K & W, K & W does not fall within the clause's purview. Second, Item Fifth does not disclose an intent to extend such a clause to K & W, but rather concerns K & W's ability to be reimbursed for obligations and expenses incurred or paid under the management contract between K & W and the Council (Def.'s Mot. Ex. 2, p. 3). This language simply confirms K & W's status as the Council's agent, and as previously mentioned, an agent is liable for its negligent acts.

## V.

Based on the foregoing analysis, the Court holds the Defendants have not waived their affirmative defense of waiver by failing to plead it in their answer under FED.R.CIV.P. 8(a); the exculpatory clause at issue unambiguously limits the Council's liability for its negligence; the exculpatory clause is not violative of § 5–401 or general Maryland public policy; Plaintiff's ignorance of the exculpatory clause does not excuse him.from its effect, and; Defendant K & W is liable for its own negligence as the Council's agent, and is not entitled to the benefit of the exculpatory clause. Accordingly, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment, and enter an order that

judgment be entered on behalf of Defendant Council of Unit Owners–Hawaiian Village Condominiums, Inc.

## *ORDER*

In accordance with the attached Memorandum, it is this 5th day of November 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion for Summary Judgment of Defendants Council of Unit Owners—Hawaiian Village Condominiums, Inc. and K & W Management, Inc. BE, and the same IS, hereby GRANTED IN PART and DENIED IN PART; and

2. That judgment BE, and the same IS, hereby ENTERED on behalf of Defendant Council of Unit Owners—Hawaiian Village Condominiums, Inc.; and

3. That a copy of this Memorandum and Order be mailed to Defendant Norberto G. Lacson and to counsel for the parties.