**In the Matter of BADGER ALUMINUM EXTRUSION CORP., Bankrupt.**

**Bankruptcy No. 78 B 197.**

United States Bankruptcy Court, S. D. New York.

Nov. 26, 1980.

MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

In the instant action, the trustee of the bankrupt estate of Badger Aluminum Extrusion Corp. ("Badger") seeks this court's determination of the priority between the conflicting secured claims of the National Bank of North America ("NBNA") and the

Long Island Trust Co. ("LIT") in net proceeds, aggregating in the sum of $19,200.00, from a sale of the bankrupt's Caterpillar Diesel Generator Set (the "generator set"). NBNA, as holder of a security interest in the bankrupt's existing and after acquired machinery and equipment, claims $11,724.12 of the proceeds, an amount representing the portion of its secured claim which will not be satisfied from the proceeds of the sale of the bankrupt's remaining machinery and equipment. LIT, the assignee of a purchase money security interest in the subject generator set with a total claim of $68,748.31, seeks the full amount of the proceeds, $19,200.00.

■ The sole issue to be determined by this Court is whether LIT complied with the dictates of § 9–312(4) of the Uniform Commercial Code ("UCC") and timely perfected its purchase money security interest. Resolution of this issue necessarily requires a determination of when Badger took possession of the collateral.

At all times subsequent to May 15, 1975, NBNA held a properly perfected security interest in all of Badger's existing and after acquired machinery and equipment. On July 28, 1977, Badger purchased the generator set from Montgomery Leasing Corp. ("Montgomery") pursuant to a conditional sales contract calling for the payment of $83,388.00 in 60 monthly installments, $59,520 for the machine and $23,808 representing finance charges. On or about this date Montgomery assigned the contract to LIT pursuant to an agreement which stated that the generator set had been delivered to and accepted by Badger on July 28, 1977. LIT perfected its security interest on August 16, 1977.

The collateral is a generator set described in the installment contract of sale as consisting of a generator, voltage regulator, control panel, fuel oil tank and other component parts. The generator set was sold as one unit, and had resale value as a unit. In deciding whether LIT's claim has a favored position over the NBNA claim, the Court must first determine on what date Badger had possession of *all* the components of the generator set. It is not disputed that the bare generator was delivered on July 29, 1977, eighteen days before LIT filed its financing statement. The delivery of integral machine equipment, comprising approximately half the value of the generator set, continued throughout August and into October and was finally completed on October 17, 1977.

The priority between conflicting security interests in specified collateral is determined by § 9–312(4) which states:

A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

■ Although "possession" is not defined by the UCC, it is well settled that for the purposes of § 9–312(4), "possession" is equated with physical control of the collateral. Instructive in this regard is *In re Automated Bookbinding, Inc.*, 471 F.2d 546 (4th Cir. 1972). In that case the collateral was a bookbinder which was transported to the debtor in crates of component parts. Delivery was taken in several installments, the last of which was on June 2, 1970. Installation, as required by the contract, was completed between June 13 and 19. The debtor was subsequently adjudicated bankrupt and in determining the priority between holders of conflicting secured claims, the court held that for the purposes of § 9–312(4), the debtor received possession of the collateral on the date that the last of the binder parts was delivered.

The Court stated:

The ostensible ownership exercised through possession is demonstrated through simple physical control. One who controls the collateral possesses it and leads others to believe it is his. To summarize, possession under § 9–312(4) is not dependent upon completion of tender of delivery terms which affect only the buyer and seller of the goods. Since the last of the binder parts were delivered to the bankrupt, in their crates, on June 2, possession of the collateral was received on that date. id. at 552–553.

In light of *Automated Bookbinding, supra*, it is clear that for the purposes of § 9–312(4) Badger did not "possess" the generator set before the time that it received the last of the component parts on October 17, 1977. Consequently, the August 16, 1977 filing of the requisite financing statement by LIT was timely and LIT possesses a validly perfected security interest which takes priority over NBNA's security interest.

In addition, there is no merit to NBNA's claim that the terms of the assignment agreement are controlling on this question. For the purposes of § 9–312(4), "possession", not the date of sale, is the determinative factor. "Possession" is triggered by physical control and the assignment agreement has no bearing on this issue.

For the aforementioned reasons, LIT is entitled to full payment of the net proceeds realized by the sale of the generator set, while NBNA's recovery is limited to the balance of the net estate subject to the secured claims. Consequently, the trustee is authorized to pay LIT the sum of $19,200.00 and NBNA, the sum of $43,133.10, in satisfaction of their secured claims.