**In re ACME MOTORS, INC., Debtor.**

**Bankruptcy No. 860090.**

United States Bankruptcy Court,
D. Rhode Island.

Dec. 29, 1986.

Robert E. Davignon, McOsker, Isserlis & Davignon, Providence, R.I., for CIT Financial Services Corp.

William F. Hague, Jr., Dick & Hague, Ltd., Providence, R.I., for William Gabrilowitz and Irving Gabrilowitz.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Submitted on exhibits and memoranda, on the motion of CIT Financial Services Corp. (CIT) for relief from stay, and for a ruling that it has a perfected purchase money security interest in the proceeds from the sale of certain equipment of Acme Motors, the debtor. The motion is opposed by William Gabrilowitz and Irving Gabrilowitz, temporary operating officers and former principals of the debtor, who argue that CIT's security interest is invalid because it was not properly perfected.[1] The equipment has been sold, and $12,000 is being held in escrow pending our decision as to the validity of CIT's alleged security interest. See Order dated July 16, 1986.

The issue here is whether CIT filed a U.C.C. financing statement within the time allowed by R.I. GEN. LAWS § 6A-9-312(4). Briefly, the facts (not disputed) are as follows: On November 13, 1985, CIT entered into a lease agreement with Acme for one Toshiba Strata XII Electronic Key Telephone System, and took back a purchase money security interest. See Memorandum in Support of CIT's Motion at 1. The lease, dated November 13, 1985, was for a term of five years and was signed by Pasquale Onorato, then vice-president of Acme, and witnessed by Edward Walmsley, treasurer.[2] See CIT's Exhibit A, Lease Agreement. On the same day, Onorato signed an "Acknowledgement of Receipt of Equipment." See CIT's Exhibit C. Twelve days later, CIT filed a Uniform Commercial Code financing statement[3] describing the collateral with the Rhode Island Secretary of State's office on Monday, November 25, 1985. See CIT's Exhibit B. The system had been delivered to Acme by Tele-Dynamics, Inc. which began the installation process on November 12 and completed it on November 13, 1985. See Gabrilowitz's Exhibit A, Letter from Tele-Dynamics to Robert Davignon, Attorney for CIT.

## DISCUSSION

To perfect a security interest in equipment, a financing statement must be filed, R.I.GEN. LAWS § 6A-9-302 (1985 Reenactment), and the priority of competing security interests is governed by R.I. GEN. LAWS § 6A-9-312 (1985 Reenactment). Subsection four states:

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten (10) days thereafter.

If CIT's purchase money security interest is properly perfected, it takes priority over the Gabrilowitz's secured claim in the amount of $329,763, see Rainier National Bank v. Inland Machinery Co., 29 Wash. App. 725, 631 P.2d 389 (1981), and, of course, over unperfected security interests, see Noble Co. v. Mack Financial Corp., 107 R.I. 12, 264 A.2d 325 (1970).

The Gabrilowitzs argue that the correct date for determining the time period within which CIT could perfect its security interest is November 12, when installation of the system was commenced. They reason that "[i]f there was installation on November 12, 1985, there must have been delivery on or before November 12, 1985. Further, if Acme received possession of the collateral on November 12, 1985, the 10-day filing period would have begun on November 12, 1985 and would have expired on Friday, November 22, 1985." See Memo-

---

1. The motion was also opposed initially by Nissan Motors Acceptance Corp. but they have since abandoned their opposition.

2. The lease was also signed by Edward R. Trotta, then president of Acme Motors, as a guarantor.

3. The financing statement covered the proceeds of the sale of the collateral. See CIT's Exhibit B.

randum of William and Irving Gabrilowitz in Opposition to the Motion at 1 (emphasis in the original). They rely upon *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546 (4th Cir.1972). In that case the debtor entered into a contract to purchase a bookbinding machine whose component parts were delivered during the period May 26 to June 2, 1970. *Id.* at 549. The contract provided for a purchase price of $84,265 for the machine, and a separate installation charge of $2160. Installation began on May 27, and the purchaser acknowledged satisfactory completion of installation on June 18. The financing statement was filed on June 15. *Id.* The court held that the ten day period allowed by § 9–312(4) within which to file the U.C.C.–1 began to run on June 2, when the purchaser received possession of the last shipment of component parts for the machine. Since the financing statement was filed more than ten days after June 2, the court held that the supplier of the machinery lost "its favored position under § 9–312(4)" and that the holder of the security interest through an after acquired property clause was entitled to the equipment. *Id.* at 553.

We agree with *In re Automated Bookbinding Services, Inc., supra,* that possession of the collateral is the controlling factor for determining the beginning of the ten day filing period of § 6A–9–312(4). However, *In re Automated Bookbinding Services, Inc.* is clearly distinguishable from the case at bar, on several grounds. First, in *Automated Bookbinding,* there were two transactions—(1) an agreement to purchase the machine and (2) a separate contract to install it. In the instant matter we have a single contract covering both the delivery and installation of the telephone system. Because the contract in question differs markedly from that in *Automated Bookbinding,* we conclude that the agreement contemplated that Acme Motors obtain possession of an operating telephone system to be installed by the supplier, Tele-

Dynamics, Inc. Since the supplier is not the secured party, it has no interest in being able to manipulate the period within which to file the financing statement. It was the ability of the secured party to affect the filing date which concerned the *Automated Bookbinding* court. *See infra,* at 703. The lease between CIT and Acme, in clause 4, specifically provides that the "[l]essor shall have no obligation to install, erect, test, adjust or service the equipment." *See* CIT's Exhibit A. Also, under the contract in question, Acme was not obligated to accept incomplete or inoperable equipment. *See* CIT's Exhibit C (all items were received by Acme "in good order and acceptable to [Acme]"). Second, the Fourth Circuit, in *Automated Bookbinding,* held that the purchaser received possession of the collateral when *all* of the equipment had been delivered, and there the parties agreed that all of the equipment had been delivered by June 2. The telephone system delivered to Acme consists of three major components. *See* CIT's Exhibit B. The Gabrilowitzs' argument that Acme had possession of the collateral on or before November 12 is based on the inference they draw from the fact that installation began on November 12. *See ante,* at 702. The telephone system in question has three major components, and since Pasquale Onorato did not acknowledge receipt of the operating system until November 13, *see ante,* at 702, a stronger inference points to *complete* possession on November 13.[4] Third, the *Automated Bookbinding* court was concerned with the policy of disclosure underlying Article 9, which allows prospective lenders to learn of any preexisting security interests before they extend credit. The court stated that if possession were defined "as requiring completion of tender of delivery terms ... a secured creditor [could] delay performance of a tender of delivery term, and thereby avoid the filing requirement indefinitely." *In re Automated Bookbinding Services,*

**4.** The acceptance notice signed by Onorato states that "[a]ll of the item(s) referred to above were received by us on the date appearing below unless a different date appears here ( ...)."

No such "different date" indicating possession before November 13 was filled in by anyone at Acme.

*Inc., supra,* at 553. In that case such a holding would have given the secured party a twenty-six day period after the purchaser acquired possession, within which to perfect the security interest, from June 2 to June 28. That concern is not present in the instant matter.[5] The Fourth Circuit was concerned that the secured party, by manipulating the completion of delivery, could thereby delay indefinitely the time in which to perfect its security interest. Here, CIT, the secured creditor, and Tele-Dynamics, Inc., the supplier-installer, are separate entities. The ability to affect the "tender of delivery" and, in turn delay the time for filing the security interest, are not in the same hands, as they were *In re Automated Bookbinding Services, Inc., supra.* The conduct of the parties to this transaction "reveals good faith, above board, uninvolved commercial credit transactions, without any withholding on the part of or secret equities among the parties," *In re Ultra Precision Industries,* 503 F.2d 414, 418 (9th Cir.1974), and the purposes of Article 9 will not be frustrated by a holding that CIT's security interest was recorded in time. Accordingly, we conclude that Acme Motors, Inc. received possession of the collateral on November 13, 1985, when the installation of the telephone system was complete, and not until then. *See Matter of Badger Aluminum Extrusion Corp.,* 7 B.R. 251 (Bankr.S.D.N.Y.1980) (machine delivered July 29 but final component delivered October 17; held: debtor did not "possess" an operable machine until October 17).

■ A determination that Acme Motors received possession on November 13 does not fully resolve this dispute, however, since CIT filed its financing statement with the Secretary of State on *Monday,* November 25, 1985, twelve days after delivery.[6] As to this, CIT argues that because the tenth day after Acme Motors received possession, November 23, was a Saturday, when the Secretary of State's office was closed, a Monday filing is permitted. *See* CIT's Memorandum in Support at 2. R.I. GEN.LAWS § 25–1–5 (1985 Reenactment) provides:

> 25–1–5. Saturday closing of public offices.
>
> If any state ... administrative offices, or any branch, division or independent agency thereof, shall close on any Saturday pursuant to the provisions of this section, any act which would otherwise be required to be performed on any such Saturday at or by such administrative office ... if such administrative office ... were not so closed, shall be so performed on the next succeeding business day.... No liability or loss of rights of any kind shall result from the failure to perform any of such acts on any such Saturday.

Since the last day for CIT to perfect its security interests fell on Saturday, § 25–1–5 protects CIT from a "loss of rights of any kind ... from the failure to perform any of such acts on any such Saturday." At least one other court has followed an approach similar to this in interpreting the interplay between U.C.C. § 9–312(4) and a state statute dealing with official offices closed on the last day for perfecting a purchase money security interest. *See Commerce Union Bank v. John Deere Industrial Equipment Co.,* 387 So.2d 787 (Ala.1980). To hold otherwise would, impermissibly, in our view, establish a nine-day period within which to perfect a purchase money security interest under §§ 6A–9–302 and 6A–9–312(4) whenever the tenth day fell on a Saturday.[7]

Accordingly, we find that Acme Motors received possession of the completed telephone system on November 13, 1985, and conclude that CIT's filing of its financing

---

5. Since the tenth day fell on a weekend, CIT filed on the next business day.

6. The first day the debtor received possession of the collateral, November 13, is not counted in computing the ten day filing period. *See* R.I. GEN. LAWS § 43–3–13 (1985 Reenactment).

7. The same result obtains if the tenth day falls on a Sunday, and in that case the secured creditor's time for filing would be reduced to eight days. *See Opinion of the Supreme Court to the Governor,* 44 R.I. 275, 117 A. 97 (1922).

statement in the office of the Secretary of State on November 25, 1985, gave it a perfected security interest in the collateral, which continues in the proceeds of the collateral currently held in escrow by order of this Court. R.I.GEN.LAWS § 6A–9–306 (1985 Reenactment).

By the prior agreement of the parties, CIT must now prove the value of the system. *See* Order dated July 16, 1986. A valuation hearing is scheduled for January 20, 1987, with the joint pretrial order to be filed on or before January 14, 1987.