### ELIZABETH J. WOLF *v.* MARYLAND TRUST COMPANY

[No. 12, April Term, 1941.]

*Decided May 20th, 1941.*

578

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*H. J. Wolfinger* and *G. C. A. Anderson*, with whom was *Robert R. Carman*, on the brief for the appellant.

*Theodore K. Dankmeyer*, with whom was *Niles, Barton, Morrow* and *Yost* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

Elizabeth J. Wolf brought suit against the Maryland Trust Company of Baltimore to recover the value of thirty shares of stock of the First National Bank of Baltimore which she had deposited with the Trust Company as collateral to the note of her husband, John C. Wolf. From a judgment for the defendant, she appeals.

In 1925, John C. Wolf borrowed from the defendant $9800, evidenced by his demand note on which was pledged as collateral stock of considerable value. In May, 1932, the amount due and owing by him was $6800 when the collateral was sold. Early in May, 1932, demand was made on John C. Wolf for additional security on his note and was asked to have the plaintiff sign the note with him. She refused to do it, but did deposit thirty shares of stock of the First National Bank of Baltimore. According to the only witness for the defendant, the plaintiff either endorsed the stock certificate or executed a blank power of attorney "to make it negotiable." Three years later, what is called a "Consent to Pledge agreement was signed by the plaintiff and delivered to the defendant, as follows:

MARYLAND TRUST COMPANY
Baltimore, Md.

I hereby declare that John C. Wolf (hereinafter called "Pledgor"), has my full consent to pledge thirty shares First National Bank stock with the Maryland Trust Company (hereinafter called "Bank") as collateral for any loan to Pledgor, and that so long as said above mentioned securities may remain in the custody of said Bank,

I expressly ratify and agree in advance to any and all agreements which said Pledgor may make with the bank regarding the use of said collateral for any loans to Pledgor, and I expressly authorize the Bank to sell said securities at public or private sale in accordance with the terms of any note which said Pledgor may give to represent said loans, and/or redeliver said securities to said Pledgor upon repayment of said loans, and I do hereby agree to save the Bank harmless and indemnified forever against any result which may follow such action.

(Signed) ELIZABETH J. WOLF

Witness:

HOWARD C. WOLF,

Baltimore, Maryland, June 5, 1935.

During the time this note was running, the Morrison Coal and Coke Company, of which John C. Wolf was secretary and treasurer, had loans with the defendant amounting to $9016.61 as of July 22nd, 1937, evidenced by collateral notes, on which John C. Wolf and Frank J. Taylor, president of the Coal Company were endorsers, and it is because of the following provision in the collateral note so endorsed that the defendant claimed the right to sell the plaintiff's stock and to appropriate the proceeds, to wit: " 'Collateral' as herein used, means not only the above collateral, but all other property of whatever kind or nature of the undersigned or in which the undersigned has an interest, which is or may at any time be under the control of the holder by reason of this agreement or otherwise; 'obligations' as herein used means not only the principal and interest of this obligation, but of all other obligations and liabilities of whatever nature at any time by the undersigned, or of the endorser or endorsers, or guarantor or guarantors hereof * * * whether heretofore or hereafter contracted. * * * It is agreed by any person, firm, or corporation who writes his, her, or its name or signature on the face or back of this instrument, whether they are makers, endorsers, sureties, or guarantors or not, that they or any of them shall be regarded as principals as between them or any of them and any holder thereof."

The defendant procured a judgment against John C. Wolf for $7858.54 on account of the deficiency on the notes of the Morrison Coal and Coke Company, and obtained a surplus of something like $4000 from the sale of the collateral to his note, which included the proceeds of Mrs. Wolf's stock, which sold for $1726, all of which was applied on account of the deficiency judgment against Mr. Wolf.

There is one exception in the record, and that is to the granting of the defendant's third and fourth prayers. The third prayer instructed the jury that "the forbearance of the defendant to sue John C. Wolf in 1932 and/or to liquidate the collateral then held by the defendant on the personal loans of said John C. Wolf, constituted a sufficient consideration moving to plaintiff for the pledge of the thirty shares of First National Bank stock referred to in the evidence."

It has long been held in this state that forbearace to sue is a sufficient consideration for a promise by a third party to pay the debt of another. In this case, however, there was no such promise made before or at the time the plaintiff furnished additional security for her husband's obligation. The cases cited by the appellee, *Hieston v. National City Bank*, 132 Md. 389; *Bowen v. Tipton*, 64 Md. 275, 285, and *Emrick v. Coakley*, 35 Md. 188, are not applicable because the promises of the holder were made before or at the time the security was given; as there was no evidence of an agreement to forbear, the question should have been raised by a special exception. Code, Art. 5, Sec. 10. The prayer does however properly instruct the jury as to what is equivalent to an agreement to forbear, and that is the demand of the defendant for and the deposit by the plaintiff of additional collateral to John C. Wolf's loan. *Baltimore Marine Ins. Co. v. Dalrymple*, 25 Md. 269, 300.

The fourth prayer instructed the jury "that unless they find that there was a special agreement between plaintiff and defendant restricting the pledge of the

thirty shares of First National Bank stock as collateral security for the personal loans of John C. Wolf only, then defendant had the legal right to apply the proceeds of all collateral held as security for the personal loans of John C. Wolf to the liquidation both of such personal loans and of loans to the Morrison Coal and Coke Company."

The trouble about this prayer, is not its form, but its disagreement with the undisputed facts. The only Maryland case cited by the defendant is *Bartlett v. Calvert Bank,* 123 Md. 628. Mr. Bartlett had loaned E. M. Noel 20 shares of stock with the understanding that it should not be pledged for any amount in excess of $3000, which was the amount borrowed on a note given the Calvert Bank of Baltimore. Noel had another note for the same amount with the bank, against which it applied the proceeds of Mr. Bartlett's stock, and it was held, on a suit by him to recover the possession of his stock that he did not have the right to recover because the agreement or understanding between him and Noel had not been communicated to the bank by either of them. *Maitland v. Citizens' National Bank,* 40 Md. 540; *Franklin Bank v. Harris,* 77 Md. 423.

In the instant case, the plaintiff "took her stock to the bank" and delivered it to Mr. Trott and Mr. Wallace, both officers of the bank. She was not informed by them that he (John C. Wolf) was under any other obligation to the bank, either as borrower or endorser, and never knew of his liability as endorser for the Morrison Coal and Coke Company until foreclosure proceedings against it in 1937. She knew and the bank knew that the only demand of the bank was for additional security on the personal note, signed by John C. Wolf as maker, the balance on which in 1932 was $6800. That is the note she was securing though she never saw it. "She knew that he owed the bank money personally, because at various times when the bank had demanded cash or additional collateral, she had drawn the money from her account, and both of them had taken the money to the bank to

reduce her husband's personal loan. She had cooperated because the securities on her husband's personal loan represented their life's savings, and she had always hoped to save this stock advanced as collateral." This belief or understanding of hers, as to what she was securing, instead of being waived, is confirmed by the "consent agreement" by which she declared her stock was deposited "as collateral for any loan to Pledgor (John C. Wolf)," and "ratify and agree in advance to any and all agreements may make with the Bank regarding the use of said collateral for any loans to Pledgor." There were no other loans than the loan already made for $6800, so that the consent agreement covered in terms, that note and no other. The proceeds of the notes of the Morrison Coal and Coke Company were not loans to John C. Wolf; they were loans made to the Coal Company, and the clause in the collateral notes which he endorsed, that the endorsers "shall be regarded as principals" only meant, in case of the failure of the Coal Company to pay when due or furnish additional security when demand be made, that payment might be demanded of him.

For the reasons given we are of the opinion that the defendant's fourth prayer should not have been granted, and that it was calculated to mislead the jury and, therefore, not harmless, even though "improper" as the defendant, in its brief contends.

*Judgment reversed with costs and case remanded for new trial.*