JOSEPH J. STROHECKER *v.* SCHUMACHER
& SEILER, INC.

[No. 66, January Term, 1945.]

*Decided June 28, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Murray McNabb* for the appellant.

*Eldridge Hood Young,* with whom was *C. Morris Harrison* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from a judgment on verdict entered in the Court of Common Pleas of Baltimore City in favor of the plaintiff (appellee) for the sum of $1,283.70 against the defendant (appellant). Appellant's motion for judgment *n. o. v.* was overruled. His brief contains an assignment of five alleged errors listed as follows:

1. The overruling of the defendant's demurrer to the plaintiff's replication, and the ruling that the defendant's special plea was bad upon demurrer mounting up to first error in pleading and the striking out of all subsequent pleadings, whereas defendant contends that the declaration was bad as changed by the plaintiff's replication.

2. The refusal of the Court to require complete answers to interrogatories filed by the defendant.

3. The rulings on evidence and prayers.

4. The refusal of the defendant's motion *n. o. v.*

5. The judgment for the plaintiff.

Appellant's appendix includes only the declaration, the pleas, replication, interrogatories, the Court's charge to the jury, and the docket entries showing the verdict and the judgment. Appellee's brief had no appendix.

When we passed Rule 36 of this Court, doing away with the necessity of printing the record on appeal, it was done with the intention of decreasing the cost of appellate litigation. For that reason the only things required by that rule to be printed were the judgment, decree or order appealed from, and any opinion or charge of the Court. But by Rule 39, it was stated that the appendix to the appellant's brief, in addition to the above requirements, should contain such part of the record as appellant desired the Court to read. In the case before us, as will subsequently appear, the most important contention of appellant is the lack of adequate evidence to take the case to the jury. Yet he nowhere prints in the appendix to his brief the evidence bearing on the question he raises. This Court would be entirely justified in not deciding this question at all, because the appellant has not indicated by printing it, that he desires us to read this evidence and we could not pass upon the point without examining the testimony. We will not take such a drastic step in this case because the rule is new in this Court, although it has been in effect in the Federal Court for a number of years. However, in the future, we do not intend to pass the one typewritten copy of the record from member to member of this Court so that each one may hunt up for himself what the appellant is discussing in his brief. The parties are each required to print those parts of the record they want the Court to consider, and they should not be surprised if, in the future, the Court examines only the record printed in the appendices and decides cases on these printed por-

tions alone. It is not our desire to limit ourselves to this, and we hope it will not become necessary, but we do not intend to permit counsel to impose upon us the burden of work, which should have been done by them.

The principal question in this case is whether appellant's demurrer prayer and his motion *n. o. v.* should have been granted. The declaration is on the common counts for goods bargained and sold, work done and materials provided and for money found due on accounts stated, and a fourth count that the defendant assumed and promised to pay the sum evidenced by the itemized account, but failed and refused to pay the same. General issue pleas were filed, and also a third plea which eventually was stricken out, so that the case was tried on the four counts and the general issue pleas. The claim of the plaintiff is that the goods, for whose payment the suit is brought, were sold and delivered to Govans Plumbing and Heating Company, a corporation, for use in the construction of the Catonsville Post Office. They were billed originally to the Company but in the early part of the year 1940, in the law offices of one of plaintiff's counsel, the appellant orally agreed that the Post Office job had not been completed by the Company, and that if the plaintiff would forbear bringing suit, enforcing a lien or taking other action to collect the balance due, the appellant would pay the amount due at the rate of $100 each month, and in the meantime take over and complete the Post Office job. That plaintiff did forbear and thereafter on June 14, 1940, was paid $50 on account and on July 15, 1940, was paid $50 on account and on November 11, 1940, was paid $50 on account, leaving unpaid the balance sued for. The question which we have to consider in this case, is not whether the appellant undertook without benefit to him to pay the debt of another, because it is not claimed there is anything in writing sufficient to make such promise enforceable. It is whether appellant made an original promise to pay this debt for a consideration moving to him.

The testimony relied on by the appellee is that of Mr. Schumacher, its president, and of Mr. Harrison, its attorney. Mr. Schumacher testified that the appellant and a Mr. Joseph E. Brown were the parties connected with the Catonsville Post Office job. They had personal differences and the account was getting behind, and after numerous discussions with both of them, at the witness's suggestion they came to the office of Mr. Harrison, because "I told them we would have to take some action because the lien law was a factor in the case and we wanted to make sure we had the protection." Appellant brought Mr. MacNabb, his attorney, along "and at that time there was a question of the assets of the Company, there were assets there, there were trucks and materials and such things. * * * And there was a question of the division of the assets and Mr. Brown stated 'if he was going to take over the responsibilities of the Company he would want the assets.' There was a discussion pro and con, but it wound up by the fact that Mr. Brown said 'Well, give me my tools and you can take over everything else here, assume the obligation of the Company and I will go on out and you can have everything.' That was perfectly agreeable to Mr. Strohecker." Mr. Schumacher further testified: "Well, after that discussion, a decision was made that Mr. Strohecker was to take over the business and assets of the Company. Strohecker made mention of the fact that the money wasn't available, wasn't ready to meet the obligation." In answer to a question by the Court the witness testified that all the various items sued for had been bought by the Govans Plumbing and Heating Company. He said to Mr. Strohecker "Well, you are going to continue to buy materials, you will need materials to finish this job, and if the cash isn't available I will make it easy. You give me a note and when the note becomes due, pay approximately $100 on the note, discount your current purchases and we will go along that way." The witness testified that it was perfectly agreeable to Mr. Strohecker and he appreciated it and he said he could work it out very nicely. The witness

also said "* * * and there was a paper to be drawn up stating those facts." It does not appear from the record that any paper was ever signed by anybody, but there is in the record, as defendant's exhibit No. 3, an unsigned letter on the letterhead of Mr. Harrison, addressed to the appellant under date of February 20, 1940, which it is indicated by the words "President of Schumacher and Seiler, Inc.," written under the place for the signature was intended to be signed by Mr. Schumacher. This letter is as follows:

"In consideration of you giving to me a promissory note of Govans Plumbing and Heating Company, Inc., endorsed by you personally for the balance due Schumacher and Seiler, Inc., which is estimated to be between twelve hundred dollars ($1,200.00) and thirteen hundred dollars ($1,300.00), said promissory note to be for ninety days and to bear interest at six per cent. (6%) per annum, you are hereby assured that if when said note becomes due you are unable to pay the same, if you will make a small payment on account and pay the accrued interest, I will renew the same for a further period of ninety days, it being my intention to co-operate with you so long as you co-operate with me and show your willingness and ability to eventually liquidate this matter. If this account is completely liquidated within twelve months from date, the interest will be abated."

The witness testified that the billing of the account was changed after the meeting to "Joseph J. Strohecker, successor to Govans Plumbing and Heating Company," but defendant's exhibit No. 2 which is a statement sent on September 30, 1941, is addressed to Govans Plumbing and Heating Company, Catonsville Post Office Job, for balance November 1940, $1,043.66; so that the billing apparently was not changed at that time. No explanation is offered of this exhibit.

Mr. Harrison testified that the meeting was held in February, 1940, at his office and that the discussion primarily was who was to take over and complete the job, because Brown indicated a desire to get out. "It seemed

that the assets did not amount to very much." Finally it was agreed that Mr. Brown was to get his tools and go about his business and that Mr. Strohecker was to continue the Catonsville job, and he would pay appellee's bill. Mr. Harrison also said that when Mr. Strohecker and Brown had decided what they were going to do, that is when Mr. Strohecker said "All right, I will take care of this." "There was some talk about us reducing the agreement to writing, and, as I recall, I got in touch with Mr. MacNabb a couple of times afterwards with the idea of having it reduced to writing, but was never able to reach that point."

The undisputed testimony shows that the Govans Plumbing and Heating Company was a corporation of which Mr. Brown and Mr. Strohecker were the stockholders, and that the corporation purchased the merchandise for the Catonsville Post Office job, that after the meeting, appellant turned over to the appellee all payments which were received from the builder. The checks were made out to the Govans Plumbing and Heating Company, Inc. He showed each of them to appellee's representatives, then gave them a check from the Govans Plumbing and Heating Company, after depositing the builder's check in the company account. Mr. Brown was the president of the Company, and the appellant was secretary and treasurer. At the time of the meeting at Mr. Harrison's office the only tangible asset the corporation had was a small truck. There was money due on that truck, and it was subsequently sold for what was due on it. The tools, implements, machinery, mechanical appliances and merchandise of appellant's heating business had been originally turned into the corporation for ten shares of its capital stock, the consideration for the issuance of the stock being fixed as not less than $1,000. None of this testimony of appellant was denied. Mr. Schumacher testified that he did not get the promissory note mentioned in the unsigned letter filed as defendant's exhibit No. 3. The appellant denied that he had obligated himself personally to pay appellee's bill, and

said that he was acting for the Company, but this testimony we cannot consider in passing upon the question whether the case should have been taken from the jury.

By Section 4 of the Statute of Frauds action is prohibited to charge the defendant upon any special promise to answer for the debt, default or miscarriages of another person, unless the agreement upon which such action is brought, or some memorandum or note thereof is in writing and signed by the party to be charged, or some other person lawfully authorized by him. The application of this section is limited. "Wherever the main purpose and object of the promisor, is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise, to pay the debt of another." *Small v. Schaefer*, 24 Md. 143, *De Waters v. Mergler*, 183 Md. 574, 39 A. 2d 668. The appellee contends that this case is within this excluded class.

It is testified by Mr. Schumacher that Mr. Brown and the appellant came to Mr. Harrison's office because of a threat contained in his words already quoted that the appellee would have to take some action because the lien law was a factor in the case and they wanted to make sure they had the protection. If the threat was that appellee would file a mechanic's lien against a post office building being constructed for the United States Government, the case comes within the decision of this Court in *Dipaula v. Green*, 116 Md. 491, 82 A. 205. There it was held that where no lien could legally be filed, abstention from the attempt was not a good consideration for a personal promise. Forbearance to sue or take action is in general a good consideration for a new promise. The rule is stated in the case of *Bowen v. Tipton*, 64 Md. 275, at page 289, 1 A. 861, at page 863, where it is said "* * * it is the act of forbearance which makes the consideration, when that forbearance is induced by the request of another and the promise to do something in return for it." In the case of *Thomas v. Delphy*, 33 Md. 373, at page 379, it is stated as settled law that "a

promise to pay the debt of another, in consideration of forbearance to sue the original debtor merely, without any new or superadded consideration passing between the promisor and promisee, is within the Statute of Frauds, and must be in writing." It has also been held that it is not material that the party making the promise shall be directly benefited by the delay, and that the fact that the creditor is injured by the delay is enough to make the consideration. *Emerick v. Coakley*, 35 Md. 188, at page 190; *Hieston v. National City Bank of Chicago*, 132 Md. 389, at page 395, 104 A. 281. In the last case the Court was considering a written guarantee. See also *Wolf v. Maryland Trust Co.*, 179 Md. 577, at page 580, 20 A. 2d 153. Without attempting to reconcile or differentiate these decisions, it is sufficient to say that we find no evidence in this case that the appellee was contemplating taking any valid or invalid action or that it made any agreement not to take such action in consideration of anything that the appellant agreed to do. The real proposition, according to Mr. Schumacher, was that the appellant was to give a note. Mr. Harrison said there was talk of reducing the agreement to writing, and he tried to accomplish this by talking with Mr. MacNabb, but was never able to do it. The unsigned letter evidently was prepared on this basis. The note mentioned in it was to be given by the Company and endorsed personally by the appellant. But Mr. Schumacher testified that he never got the note.

Nor do we find anything in the record indicating any benefit accruing to the appellant personally. This Court, speaking through Judge Delaplaine, in the recent case of *Crown Realty Corp. v. Weinstein*, 177 Md. 260, at page 263, 9 A. 2d 602, at page 603, said: "It is frequently difficult to determine, merely from the words in which a promise has been made, whether the undertaking is collateral to an engagement of liability or an original undertaking. In deciding this question, the situation of the parties and all the surrounding circumstances should be considered." The situation of the parties in this case was

that the Company in which the appellant was a stockholder and an officer, owed the appellee money, which it could not pay. It had a small amount coming to it from the builder of the Catonsville Post Office, and the two officers of the corporation were having a private disagreement. The work was not quite completed. A conference of all the parties was held. As a result of that conference, the corporation was permitted to complete the job without interference from appellee, and all the payments received by it, from the builder, were immediately turned over to the appellee to be applied on its claim. The appellant received no assets from the corporation, according to the undisputed testimony, except a truck which was afterwards repossessed for the balance due on it. This truck appellant did not get personally, but as an officer of the corporation and it was used to finish the corporate undertaking. The creditor lost nothing by the delay, because he got all the money that was coming to the corporation, and so far as the records show it had no other assets except this money and this truck. The appellant received no personal benefit, and it is difficult to see any benefit that the corporation received from any delay. We are passing upon the question whether there was any evidence to justify the jury in inferring that appellant made a direct promise to pay the appellee's bill in consideration of some benefit accruing to him. The evidence points, not to such consideration, but rather to an oral agreement made by appellant without benefit to him to personally pay the debt of the Company. This agreement was to be put in writing, but was not and it is, therefore, unenforceable. We cannot find any evidence that appellant made a new or original promise. Under these circumstances, it is a necessary conclusion that the appellant's demurrer prayer should have been granted, that the jury should have been instructed to find a verdict for the appellant and that the appellant's motion for a judgment *n. o. v.* should have been granted.

In view of our conclusion on this point it is not necessary for us to examine all of the other questions raised by the appellant.

The judgment will be reversed without a new trial.

*Judgment reversed without a new trial, with costs to appellant.*